We just have one case for today, 2015-3140, Lal v. MSPB. Mr. Chusi, please proceed. Thank you, Your Honor. Your Honor, before I begin, I want to thank the court for its courtesies, given my health situation. And the same goes to the government, which was extremely courteous. If it pleases the court, Dr. Renu Lal was employed by the Department of Health and Human Services, the Centers for Disease Control, since 1989, ultimately serving as a distinguished consultant in infectious diseases. In 2012, Dr. Lal was converted to the accepted service in which she served for over two years. So if you say she was converted to the accepted service, what was she in before the accepted service? She was in a series of one-year temporary appointments. Those were in the accepted service, too, weren't they? She was just converted to an indefinite term in the accepted service? Yes. Okay. Okay. This case I think is very complicated, but she's always been appointed under this special hiring authority in 209-F, right? Yes. Which places people, which allows them to be appointed without regard to competitive service procedures, which means she's in the accepted service. Yes. Well, there's only the competitive and the accepted. And you get in the accepted service by a number of means, either by OPM, by statute, by president, right? I'm not sure about presidential appointees. The president – well, Schedule C is different, but I mean the president can accept certain classes. Yes, absolutely. He has that statutory authority, or maybe constitutional authority. The difference is, and the point I was about to make, is that under the due process amendments, once she passed the two-year period, she became an employee as defined by Section 7511. So can I ask you this? I know you've been doing federal personnel law for a really long time now. Do you have any sense of how many other special hiring authorities are out there, like 209-F, that accept people from the competitive service by statute as opposed to the Schedule A listing? I know that for HHS, there's 209-F, which applies to consultants, and there's 209-G, which applies to I think scientists and other physicians possibly and other kinds of categories. But those are the two that HHS uses, and I believe the department's interpretation of 209-G is the same as 209-F. To give you an idea, I think GAO did a report on Title 42 authority in 2012, and they found that 25% of NIH employees were Title 42. In 2013, I saw this morning, there were over 18,000. And when you say Title 42, you mean the whole group, right? 209-F and 209-G. Oh, just 209-F and 209-G, not the uniformed officer core? No. Okay. And in 2013, there were over 18,000 employees at NIH, so 25% of them, if that's GAO's estimate. So there's over 4,500 of these people. We looked at the report. I don't remember the details, but is there any breakdown of how many of those are serving under term appointment instead of indefinite appointments like the ones here? We provided the information in the appendix. Apparently, in 2012, HHS, and possibly it was in response to the GAO study, but HHS converted Dr. Lau under 209-F for the first time. And I believe it was because they were getting pressure with respect to these constant term appointments, which provided the employees with no protection at all. I looked as hard as I could for how many Title 42 employees there were at HHS. So I guess, I mean, this whole thing, frankly, I think you have a very good plain language argument on 7511 and the due process amendments. On the other hand, it seems clear that the agency has been operating under the assumption for many, many years that there is no appeal rights, and they've been hiring people with that in mind, and they probably converted a lot of these people to indefinite instead of term with that in mind as well. So I understand you have your legal case, but it seems like there may be some really bad ramifications for people going forward as to whether they're going to be classified as term or indefinite if you win. Well, I don't believe the department could go back to classifying these people as term. No, but I mean in terms of future hiring. I mean, it seems likely that if they're going to be subject to appeal rights, if they're classified as indefinite and not given short-term appointments, that they're going to go back to using short-term appointments. But these aren't short-term appointments. Many of these Title 42 employees have been employed by HHS for years. But under term appointments. Only with respect to Dr. Lal and CDC. I believe the FDA and, I mean, I have clients at FDA and. So the rest of them use the indefinite appointment. I believe they do. Maybe my questions are going to be way too simplistic given how familiar both of you are with these topic areas and have been for years. But I just want to get to the cases. And as I see the battleground in the fight over the cases is that you think this case is closer to Briggs. And the government thinks it's closer to Bennett. Is that fair? Yes, that is fair. Okay, so you're not saying that we would have to say that we would have to overrule Bennett to rule in your favor? No, not at all. You see daylight between the two. Absolutely, and I think so does the court in Bennett. Ms. Bennett invoked Briggs in her defense. She said that under Briggs I should have appeal rights. And the court specifically said in Bennett you would but for the fact that your statute specifies that you can be removed without regard to the civil service laws. Whereas in Briggs it did not say that. Okay, so the language in Bennett that says in order to have appeal rights it would have to say so affirmatively. Yes. You think that it wasn't necessary to the decision and that in fact that saying so affirmatively should relate to the lack of appeal rights. No, I believe what this court said in both Todd and Bennett. Todd first because Todd was the first case to come after the due process amendments which redefined employee to include these accepted service employees. And Todd went in and invoked the due process amendments and this court said in Todd you're right. Under the due process amendments you would have the right to appeal except for the fact that your appointing statute says you can be removed without regard to the civil service laws. It actually was even more specific, wasn't it? It said you could be removed without regard to Chapter 75. Well, I think it said 7511, 7512, and 7701 which is the MSPB statute. Right. So it was specific but clear. And in Bennett the appointing statute said employees shall be appointed, compensated, and removed without regard to the provisions of Title V. And isn't it true that after Briggs Congress actually amended the statute to say may appoint and remove? Yes. And that in our case the statute only says may appoint. That's right. So Congress of course would be free to make a Briggs style amendment which may very well change, even if you prevail today, it could change for future employees the state of the law. That's right. Frankly, it would be interesting if that was the choice that Congress made. Can I just ask you about Bennett a little bit more though in comparison to this case? Because Bennett and this case involve really, really old statutes. They date back to like the 40s and 50s, right? They've been amended but the special hiring authorities in both of them are old. That's right. And they use kind of a different language. But neither of them had any thought as to whether there was going to be some kind of appeal rights to the MSPB when they were enacted. Because what they were both doing is accepting people from the competitive service rules then in place. Is that right? Well, I think it's hard to read the statute in Bennett that way because they specifically— Yes, it was amended and renumbered. It was previously something other than—I think it— But was it successively changed or did it have the same language that you could be appointed and employed without regard to civil service laws? I'm not trying to trip you up here, but I find the specificity of the language in Bennett to be a little bit of a red herring because nobody was contemplating when it said appointed and employed without regard to civil service laws anything about what was going to happen. In the CSRA or the due process amendments and the language that they used in this statute, appointed without regard to civil service laws, I think was pretty much another term of art to accept people from competitive service rules at the same time. Well, but it was primarily the competitive service salary rules. In the GAO report that I referenced, they said that over 1,400—this is 2012—over 1,400 Title 42 employees at HHS were earning in excess of $150,000. Well, that's today, though. I mean when 209-F or its predecessor was enacted a long time ago, it may have been to get them so they could hire outside of competitive service and get them more money, but they were outside of competitive service altogether. They didn't have the same kind of appeal rights that old people did to the Civil Service Commission. Well, I started to become familiar with the Federal Civil Service in 1974, and employees had appeal rights. There was the Civil Service Commission's Appeals and Review Board, which went back a fair way. Congress had long provided— Right, but I think you would agree that these 209-F employees couldn't have gone there. I don't know why we should make that assumption. Well, I think that's the point of all this language dating back. Maybe if they were preference eligible, they could have gone there, but I mean I think it's pretty clear that when you're appointed without regard to the Civil Service laws, they don't apply to you. Well, I don't believe that that's clear, and the reason I don't believe it's clear is because of the specific statute in Todd. Todd said that he could be appointed without regard to the Civil Service Act and 75, 75-12, and 75-11. Sure, but I mean did you look at Todd? Todd is also—involves an old statute, and we traced back the legislative history on that, and it was modified at various points to make it more specific, to specifically include the references to the CSRA provisions, and this one hasn't been. Yes, Judge, but I believe that that action by Congress with respect to the VA employees in Todd is an indication that it did not intend that result for the Title 42 employees here. In fact, if appointment without regard to the Civil Service Act included removal, then why would there be the need to add 75, Chapter 75 and 77? That's really, I think, an indication of Congress's intention to specifically provide it for those employees, and Bennett was, of course, the VA canteen, but not doing it here. So, you know, I think we have three points. Number one, Dr. Lyle was an employee after the due process amendments. I believe that this court has made clear that absent a specific reference to removal, appointing an employee without regard to the Civil Service laws is not enough. And in that case, OPM's regulation, which provides that an employee like Dr. Lyle under Title 42, who is appointed without regard to the Civil Service laws, is still denied appeal rights unless Congress specifically says that she has them. And in Briggs, this court said that that was an ultra-virus reading. You said you had three points, because you're in your rebuttal time. Three points. I got one was employee after due process. Two was statute doesn't say removal, not enough. In the statutes. And number three is OPM's regulation, which the board relied on, cannot provide by regulation what Congress hasn't provided by statute. Okay. Why don't we save the rest of your time for rebuttal. Thank you very much. Mr. Moyers. The board's basic view of these statutes is that there's a difference between statutes with a broad, generalized exclusion without regard to the Civil Service laws, or at least in earlier days without regard to the Competitive Service laws, versus statutes which list individual provisions that don't apply, or in some cases exempt particular actions by the agency without regard to the Civil Service in the Bennett case. But isn't that what we said in Briggs, that there is a distinction between those two categories? Yes. Briggs changed the law in that regard, from that point. Prior to Briggs. I don't know that it changed the law. It interpreted the statutory provisions. Yes. But what I'm saying is that the exclusion, beginning with Briggs, the board, and then the court affirming the board, found that the exclusion from the Competitive Service was only a partial, particular exclusion and not a generalized one. But wasn't that the whole point of the 1990 amendments, is to bring these excluded employees into the category of employees that do have appeal rights? In general, that was the case, but there was no intent shown, and the court has found, that they did not intend to address separate statutory authorities outside Title V, such as we have here. We have said, if there are clear, separate statutory authorities that bar any rights upon removal, then we would assume that Congress did not mean to override those. But in the absence, because what would be left? Who would the 1990 amendments affect if we said that every single statute that exempted anyone with respect to their hiring, would not also exempt them with respect to their removal? Or would? Well, there were a number of Accepted Service employees who were not accepted because they were under these specific statutes, saying appointed without regard to the civil service. They're classified as accepted for other reasons, by OPM or by statute. Well, give me some examples. The vast majority of Accepted Service is done by OPM and is on Schedule A, not through these special hiring authorities under specific statutes. And the basic concept is, they don't have to go through a competitive examination, as you do with a competitive service. Although, the statute governing 3320 requires a merit-like evaluation of them, but it doesn't require the same kind of... But all of those employees would then be eligible for appeal rights upon removal after the 1990 amendments? Yes, after the 1990 amendments. But there's nothing in the 1990 amendments that says, this applies to Schedule A employees only? No. It simply... Isn't this the real problem? I mean, there are references to that in legislative history, but Congress didn't put that in the statute. Well, that's correct. I mean, I understand your argument and the Justice Department's argument to be that 209F, if you look at it, always meant to exclude these people from CSRA coverage, but I don't see how you get there, because all 209F does is accept people from the competitive service. Everybody agrees that these people aren't in the competitive service, and so they're in the Accepted Service. But if due process amendments got enacted, it seems like unless you can find some way to carve out exception by statute rather than exception by regulation, that it swept in people like the petitioner here. The appointing provision excluded them from the civil service laws, not just from the competitive service. And because of that, and the only way you can limit that is a petitioner would limit it by using the word appoint, because it uses the word appointed. But appointment in the federal service is much more than just the initial hiring act. But again, isn't the problem, it's still when you say it's accepting them from all these laws. The same thing would have applied to all the pre-CSRA exceptions from the competitive service by, I guess, the old Civil Service Commission. But there were various regulations governing them. Also, when OPM has accepted them, but it also provides various regulations dealing with Part 302 deals with how they're to be treated. So you think all federal employees that are accepted from the competitive service by statute, from the civil service laws by statute, have no appeal rights? I think that would be correct, yes. How is that consistent? At least if it's outside of Title V. How is that consistent with the board's decision in Hamlet regarding the power of the Attorney General to appoint assistant US attorneys, where you came to the opposite conclusion? I'm not familiar with that. I mean, it's a statutory exception. I think it's probably in Title 28, since it involves the Attorney General's power. And the board held that. I'll ask this to your friend. She may be unhappy to hear this. But the Department of Justice acquiesced in that decision and didn't appeal it, and agrees now that despite the fact that assistant US attorneys are appointed through the specific statutory authority and can be paid off schedule, nevertheless have appeal rights. I think that must be a special case, because it isn't consistent with the way these other statutes have been ruled on by the court over the years. There's many decisions. Actually, I see a very clear line here. And I think the line is, if there are specific references, like there are in Bennett and Todd, to post-CSR protections and appeal rights, we found that that's enough to get it out. But if it's very general provisions that were adopted well before the CSRA, or don't mention those kind of things, we found them not to get you out of the due process amendments. Are you asking that we overrule Briggs? No, no. We don't disagree with Briggs, because as we see it, Briggs is a statute which lists specific provisions which are exempt and did not list removal, in contrast with a generalized exception which simply exempts generally from the civil service laws. And in that connection, I want to mention with Todd, the 2020 USC 241A provision there is also a list of specific exclusions. The reference to the Civil Service Act is not a shorthand reference to the civil service laws. Did you look at the statutory history of Todd? Because it was enacted well before the CSRA also. Oh, long before that. And it was amended after it, I think, to add in those specific exclusions. But the initial reference to the Civil Service Act was a reference to the 1883 Pendleton Act, which is what started the whole system and only dealt with competitive examination and would not have said anything about removal. So why wouldn't we read into Todd the view of this court and Congress that these general exceptions weren't enough after the due process amendment? And if Congress still wanted them not to have appeal rights, they went in and amended it specifically, like they did in Todd, and like they did in Briggs post our decision. If there's no affirmative evidence that Congress intended what you say, so I don't know. Except the plain language of 7511. I mean, it seems to me, it may be that this is what everybody understood, but Congress didn't put that in the statute. And I don't understand how OPM's gloss on a plain language statute saves you. It sort of violates the principle that a broad general later statute should not overrule an earlier statute, which deals with a very specific and narrow subject. And that was the basis, in fact, for the court finding in Todd and again in Bennett that there was no implied repeal of these earlier statutes. But if, in fact, Congress really didn't intend the 1990 amendment to apply more broadly, couldn't it have said so? Couldn't it have specifically limited its application to those that are not governed, that were not hired pursuant to statute? Well, it didn't say so in the statute. Right. It didn't say so. And we now know that. It didn't say either way. But we now know that it knows how to say that removal is also not governed by the 1990 amendments because it has amended statutes to do so. But it didn't go in and say any general statute or anybody hired pursuant to statute is not governed by this amendment. It didn't do that. But I don't think you can draw that much from it because there have been different reasons why they've made changes to these statutes, not just a general thing, I don't think. Is my time up? So I think the basic picture that we see is that you have these specific, these generalized exceptions from the civil service laws, and they distinguish these cases under those kinds of laws from the more recent ones where there's a list of provisions, and it is therefore critical whether removal is excluded or not. Okay. We have your argument. Your time is up. Thank you. So let's hear from Ms. Beza. Good morning, Your Honors. May it please the Court. So I can tell from your action that you don't have any idea what Hamlet is either, but let me just lay it out for you. I'm sorry. Sure. The Attorney General has the statutory authority to hire assisting U.S. attorneys without regard to the civil service laws and can set the pay at whatever level he or she chooses. Despite that, and over the government's arguments, the Board found that the due process amendments nevertheless extended MSPB appeal rights to those attorneys. It's accepted by service by statute, but isn't very specific about accepting from removal and things like that. The Justice Department acquiesced in that decision. Why isn't that an indication that you agree that people accepted by statute can still be subject to the due process amendments? Well, Your Honor, I would focus here on these specific statutes at issue. I don't think that that would have been a concession and that a general rule exists where you have that language. But that's really the problem for you here is the cases that we found that appeal rights were still denied had very specific references, either in Chapter 75, which is the appeal process, or removals, which has been interpreted to be a reference to that. You don't have that here. You have a general statute that says appointed without regard. And it seems to me that all that does is put these people in the accepted service. And once they're there, you then look to 7511 to determine whether they have appeal rights or not. And as Your Honor pointed out earlier, the statute does date back significantly prior to the CSRA and the MSPB itself. The statutory history that I believe was referenced in the cases indicates that when the statute was created, it was intended to be a broadening of a provision that at that time applied to the National Cancer Institute. I understand all this. And I understand when that statute was enacted, the whole point of this was to get higher authority, not having to go through the civil service process, not having to pay them that. And they clearly at that time probably had, you know, there was no MSPB. They had no appeal rights. I suspect that they had very limited appeal rights to the Civil Service Commission. But there were a lot of people like that, including almost everybody in the accepted service, whether they were there by statute or not. And that's why Congress, after Fausto, enacted the due process amendments to give very broad protections to accepted service employees with specific delineated exceptions. And they didn't make this distinction, which is what I think you and the Board are ultimately relying on between accepted by statute and accepted by OPM under Schedule A. They could have, but they didn't. So why isn't that the end of the case for us? Well, Your Honor, I think our argument is that these employees are accepted by statute. No, I understand. But that's not what 7511 says. If Congress had said, we just want to give appeal rights to the vast majority of people that were accepted by regulation or by OPM under their Schedule A authority, they could have put that in. Or they could have put at the end of the list of exclusions of various agencies, they could have said, and anybody else accepted from the competitive service by statute. They didn't do that. They didn't make this distinction between accepted by statute, accepted by OPM, and accepted from some other authority. I'm sorry, Your Honor. I'm not entirely sure I understand the question. But I think our point is that this Court has held in numerous cases that there are statutes that were not specifically referenced under Chapter 75 that do.  Where that statute didn't specifically either reference the appeal rights provisions of the CSRA with regard to the MSPB or at least removal procedures. I do not believe that this Court has seen such a statute at this point, Your Honor. Do I understand your response to Judge Hughes' question regarding Hammett when you responded and said, well, that's a different, you know, if that's the case, do you disagree with your colleague's argument that there should be a bright line between those appointed by statute and those appointed pursuant to Schedule A? I don't know that I would go so far as to say that there is a bright line, Your Honor. Honestly, this is not a question that I have considered prior to hearing it put to Mr. Morrow. So where do you draw the line? I don't know that there is a line, Your Honor. I do think that this is a statute-by-statute question based on the intent behind— Why isn't the line whether the statute explicitly references either Chapter 75 or removal procedures and the like in one that is more general? Is the line—so you're suggesting that the removal language is a prerequisite as— Well, I think given that Congress enacted a very broad statute in the due process amendments and without distinction between accepted by statute, accepted by OPM, accepted by the President— Yes, Your Honor. They didn't draw a line between those classes. And so if you're asking us to draw a line based on our case law, it seems the line we've drawn is we can glean some intent from Congress's actions in those specific statutes by referencing removal procedures or Chapter 75, but absent that, we can't glean any intent at all that Congress intended those people to still be carved out from the due process amendments except for those they specifically did. I know I'm out of time, but if I could just briefly respond. I don't believe that's a line that has been drawn in these cases so far. And in fact, I would point back to Bennett where there was removal language, but the court was concerned that the statutes relevant to that language were not referenced and did look to the legislative history to discern the plain language of that statute. That last sentence made absolutely no sense to me as a legal point, but we'll just skip over that for now. Why don't you tell me why this case isn't like Briggs, because I'm just having trouble distinguishing it. You want me to go statute by statute, but then you want me to figure out what the statute means based on the legislative history? Is that what you're saying? Because I'll never do that. Understood, Your Honor. The plain language of the statute is the plain language of the statute, and that seems to be what we looked at in Bennett and then what we looked at in Briggs. In both cases, like I'm looking at Briggs, and I don't see a single site anywhere to the legislative history of Briggs. What I see instead is a clear walk-through discussion of the language of the statute and the OPM regulations. Am I missing something? No, Your Honor. How does this case differ from Briggs in the way that the court walked through the statute and said Section 783 does not remove the executive director's position from the ambit of Title V's procedural protections for removal? It walked through the language of the statute, and what it found it's holding is that while it exempts from certain procedural protections in certain circumstances, it doesn't exempt it, quote, for removal. Yes, Your Honor, and I think the distinction between the statute here and the statute in Briggs is that the statute in Briggs did specify certain portions of the civil service laws. It specified the Title V provisions governing appointments. It specified certain portions of Chapter 51 and Chapter 53. That's because Briggs is a post-CSRA statute, so you can look at it. It was aware of that. The problem we have in this case is we have a statute that dates back to, like, 1940s or 50s, and so when the language of it was enacted, nobody had the CSRA in mind, so we can't actually determine whether that language meant to exclude them from the CSRA or not at all because it wasn't there. Yes, Your Honor. What we have to determine is what the due process amendments did with regards to those people in that category, and there's nothing in the due process amendments, is there, that doesn't give appeal rights to people just accepted from the competitive service as they were in this statute. There is nothing in the due process amendments that... But I'd like you to actually have a chance to answer my question. I'm sorry. No, you don't have to apologize. If you wouldn't mind going back, I'd like you to address why Briggs is different. You started to address it but got cut off and didn't get to finish, so I'd really like to hear the answer to my question. Briefly, the distinction between Briggs and Section 209F is that Briggs enumerated very specific portions of the civil service laws, whereas our statute contains a generalized exemption. And the court noted what you're referring to in Briggs, but it also went on to say, however, Briggs doesn't specify anything with regard to removal, and each of the sections that it enumerates in the statute are with regard to the may appoint provision, right? And each of those statutory sections, if you look at them, go to what is necessary to be performed in the process of appointing, don't they? Your Honor, I would separate the may appoint language from the provisions of Title V governing appointments. The may appoint language doesn't refer specifically to the appointment provisions, otherwise that would be redundant. It says it may appoint without regard to the appointment provisions, without regard to these other chapters of that law. And I think it's the provisions governing Title V appointments language that is the language that is contrasted to the general language we have in this case. But all of that language in both instances in Briggs is going to appointments, and didn't we in Briggs draw a line between sections which pertain to appointments and sections which pertain to removal and removal rights? I mean, that's the way I read Briggs. That seems to be the critical thing for you to have to get around. Your Honor, my reading of Briggs was not that there was a line drawn between appointment provisions and other provisions, but rather that there were specific provisions, some of which were appointment provisions or other provisions governing the initiating aspects of a position. But that's the critical part for me, which is Briggs seems only to be that statute at the time seemed only to be about the initiating employment provisions, and that seems to be what our court held when it said, and we hold that these provisions don't pertain to removals. It seemed to draw a line, and that line seems to me similar to the statutory language we have in this case, which again only speaks to appointment, and I just don't see any evidence in the statute that it was meant to go broader than appointing process provisions. And, Your Honor, I don't disagree that the enumerated provisions in Briggs are relevant to appointments and don't reference removal procedures. But, again, I would note that those references are not found in our statute, and the language that I think is— When you say those references, the may appoint language is also— It is. It is. It just doesn't then cite any of the specific provisions, which, as Judge Hughes pointed out, didn't actually exist at the time this statute was created, so it couldn't have. But apart from that, it still, though, seems to be cabined into an analysis of what may or may not happen in the appointment process as opposed to the removal process, doesn't it? Your Honor, and this is getting into a new topic that I know I'm well over my time for, but I think this goes back to what I believe was well expressed in the MSPB's brief, that the may appoint language that we're talking about here, separate from references to the appointing provisions of Title V, when we were talking about may appoint, we were talking about creating this appointment position. We refer to appointments as a year-long appointment, as an indefinite appointment. The reference to appointment or to may appoint is a broader reading rather than the moment of appointment to the employment relationship. And again, I'm not trying to get us into a new topic with eight minutes left. Okay, that's fine. Any further questions? Thank you very much. Thank you, Your Honor. We have some rebuttal time left. Mr. Chusey, please proceed. Yes, I just have some brief points. I think with respect to your question, Judge Hughes, the specific provisions of the appointing statute in Briggs were Chapter 51 and Subchapter 2 of Chapter 53. Chapter 51 is a compensation statute, so the position did not have to comply with the compensation provisions. And Chapter 53 deals with the senior executive service. None of those have anything to do with removal. And I believe that was precisely the point that the court made in Bennett when Ms. Bennett tried to throw herself under the umbrella of Briggs and the court said, no, your statute refers to removal, and Ms. Briggs did not. I also want to – I know that the court is familiar with the legislative history that I included, but there's one provision of the legislative history that I just want to read as I take up the remainder of my time. The key to the distinction between those to whom appeal rights are extended and those to whom such rights are not extended is the expectation of continuing employment with the federal government. Lawyers, teachers, chaplains, and scientists have expectations. Presidential appointees and temporary workers do not. Okay, your time is up. That was page 18 of my addendum. Thank both counsel for their arguments. The case is taken under submission. All rise.